IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| MARK AND MICHELLE SORRELL, | ) | Case No: 06-31720 |
| | ) | Judge Waldron |
| Debtors. | ) | |
| _____ | ) | |

DEBTORS' RESPONSE IN OPPOSITION TO THE
U.S. TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE

Now come the Debtors, through counsel, and respectfully request that the *U.S. Trustee's Motion To Dismiss Chapter 7 Case Pursuant To 11 U.S.C. Sections 707(b)(2) and/or (b)(3)* be dismissed.  For the reasons set forth, hereinbelow, it is respectfully submitted that granting a Chapter 7 discharge in the instant matter would not be an abuse.  Rather, a discharge is warranted under the facts of this case and prevailing statutory and case law.


Dated:  9/26/06                                          /s/ Eileen K. Field
                                                         _____
                                                         Eileen K. Field, Esq. #(0007384)
                                                         Attorney For Debtors
                                                         36 East Fourth Street, #1127
                                                         Cincinnati, Ohio 45202
                                                         Phone: (513) 684-9000
                                                         Fax: (513) 684-8892
                                                         eileenfield.atty@fuse.net

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

FACTUAL BACKGROUND

The debtors, Mark and Michelle Sorrell (the "Debtors"), filed their chapter 7 bankruptcy petition on July 3, 2006. The Debtors household consists of five members, to wit: the Debtors, a (17) year old son, a (14) year old daughter, and an (11) year old son. Mrs. Sorrell is a teacher with the Lakota School District. Mr. Sorrell is receiving unemployment compensation. He was previously gainfully employed at AK Steel, but has had no employment income for greater than (6) months prior to the month of the filing of the Debtors' bankruptcy. Total combined net income, including unemployment compensation, is stated as $4,515.84 on Schedule I of the Debtor's petition. Schedule J expenses are $6,481.80, which includes $570 per month child support payment which has been suspended while Mr. Sorrell is unemployed. Mr. Sorrell has been seeking employment. The expenses do not include a monthly expense for the Debtors' 2006 Ford Fusion, which is being surrendered. Although the Debtors anticipate the need for a replacement vehicle when Mr. Sorrell regains employment, projected expenses are speculative and will depend on the amount of income that Mr. Sorrell can generate with future employment.

THE TRUSTEE'S MOTION TO DISMISS

The Trustee's Motion to Dismiss is premised upon a number of considerations and interpretations of the BAPCPA. Specifically, the U.S. Trustee argues that the Debtors' case should be dismissed for abuse for the following reasons:

1. Unemployment compensation should be included in the Debtors' Current Monthly Income;

2. The Debtors should be allowed the standard cost for only one vehicle, as the 2006 Ford Fusion is being surrendered;

3. The future payment on the secured claim associated with the 2006 Ford Fusion should be disallowed since the vehicle will be surrendered; and,

4. The totality of the circumstances leads to a finding of abuse.

It is respectfully submitted that the arguments proffered by the U.S. Trustee are unsupported by law or that an alternative interpretation of the BAPCPA can be reached which is favorable to the Debtors and which will warrant a dismissal of the Trustee's Motion.

## UNEMPLOYMENT COMPENSATION IS NOT INCLUDED IN THE DEBTORS' CURRENT MONTHLY INCOME

The Statement of Current and Monthly Income and Means Test Calculation does not include income derived under the Social Security Act. The official form has, since the effective date of BAPCPA, allowed for disclosure of unemployment compensation benefits without its inclusion in the gross monthly income figure, recognizing that the Social Security Act funds state unemployment compensation administration.

The Social Security Act, Title III - <u>Grants To States For Unemployment Compensation Administration</u>, provides for appropriations to states for the administration of their respective unemployment compensation laws. Section 301 [42 U.S.C. 501] specifically provides,

> Section 301 [42 U.S.C. 501] The amounts made available pursuant to section 901(c)(1)(A) for the purpose of assisting the States in the administration of their unemployment compensation laws shall be used as hereinafter provided.

Section 302 of the Act provides for payments to the States of such amounts that the Secretary of Labor determines are necessary for the proper and efficient administration of the state laws. Section 303 of the Act contains mandatory provisions required under State laws for certification for payment of federal funds.

Clearly the implementation of the state unemployment compensation laws are so inextricably intertwined with the Social Security Act, that a persuasive argument can be made

that unemployment compensation benefits are derived under the Social Security Act; without federal appropriations, the state programs would not be viable.

It is, therefore, respectfully submitted that unemployment compensation benefits should not be included in the Debtors' Statement of Current Monthly Income and Means Testing. Without the addition of the unemployment compensation, the Debtors' gross income falls below the median for a 5-member household, and there is no presumption of abuse.

### THE SECURED PAYMENT ON THE FORD FUSION SHOULD NOT BE DISALLOWED AS IT IS A PAYMENT THAT IS SCHEDULED AS CONTRACTUALLY DUE

Also at issue in the case at bar, is whether the Debtors can subtract from Current Monthly Income ("CMI") payments due on the 2006 Ford Fusion, notwithstanding the fact that they have stated an intention to surrender the collateral and not reaffirm the secured obligation. The Trustee objects to the deduction of these payments.

Section 707(b)(2)(A)(iii) provides, in pertinent part, that the "debtor's average monthly payments on account of secured debts" are to be "calculated as the sum of -- the total of all amounts ***scheduled as contractually due*** to secured creditors in each month of the 60 months following the date of the petition; and ... any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependants, that serves as collateral for secured debts ... divided by 60." Id. Section 707(b)(2)(A)(iii). (Emphasis added).

With respect to statutory construction, it is well established that,

"(t)he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v Oceanic Contractors, Inc.*, 458 U.S. 564, 571,

102 S. Ct. 3245, 3250, 73 L.Ed. 2d 973 (1982).

In *Hartford Underwriters Ins. Co., v Union Planers Bank, NA*, 530 U.S. 1,6,120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), the Supreme Court recognized that "when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms".

In the case of *In re Walker* (Bankr. S.D.Ga.) Case No 05-15010, Judge W. Homer Drake, Jr., addressed the issue of whether the plain meaning of 11 U.S.C. Section 707(b)(2)(A)(iii) required a debtor to reaffirm secured debt in order to deduct the payment from CMI. In the *Walker* case, the debtors sought to deduct from CMI payments due on their secured debts, despite the fact that they had surrendered or would surrender the collateral securing those debts.

Under 707(b)(2)(A)(iii), amounts to be deducted from CMI on account of secured debt are those that are "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition."

In determining that the foregoing provisions of BAPCPA did not require the debtor to reaffirm secured debt in order to deduct the payment from CMI, the *Walker* Court reasoned,

> "The common meaning of '**as contractually due**' is that the debtor is legally obligated under the contract, in this case, a promissory note, to make a payment in a certain amount, with a certain amount of interest, for a set number of months into the future. Accordingly, payments that are '**scheduled as contractually due**' are those payments that the debtor will be required to make on certain dates in the future under the contract." (Emphasis added).

In determining that it need look no further than the petition date to determine whether the payments at issue were "scheduled as contractually due to a secured creditor" in the months following the petition date, the Court rejected the Trustee's position that it should consider the debtors' intention to surrender the collateral. It was the Trustee's position that upon surrender of

the collateral, the payments would no longer qualify as payments "scheduled as contractually due" to secured creditors during any of the sixty months post-petition. In discounting the argument proffered by the Trustee, the Court concluded that the plain meaning of the statute permitted a reduction from CMI for payments on secured debts that have not been reaffirmed. In this regard, the Court opined,

> "Congress' choice of the phrase "scheduled as contractually due," suggests that, in determining which payments should be averaged for the deduction, the Court should determine how many payments are owed under the contract for each secured debt at the *time of filing*. This interpretation gives meaning to the word 'scheduled', which implies the possibility that the payments may not be made as required under the contract, either because the debtor will surrender the collateral or because the payments might be modified and paid through a Chapter 13 plan. *If the intent were to permit only those payments that would actually be made in the post-petition period, Congress could have specified that the payments to be deducted are only those payments to be made on secured debts that the debtor intends to reaffirm*." (Emphasis added).

Based upon the foregoing authority, it is respectfully submitted that the payment attributed to the 2006 Ford Fusion is a payments "scheduled as contractually due" as of the date of the filing of the petition, and that the payment should be allowed as a reduction to CMI.

### THE DEBTORS SHOULD BE ALLOWED THE STANDARD COST FOR TWO VEHICLES, WHERE ADDITIONAL VEHICLE EXPENSE IS ANTICIPATED

The Trustee further argues that the Debtors should be limited to the standard cost for only one vehicle, as the 2006 Ford Fusion is being surrendered. In short, it is unreasonable to assume that alternative means of transportation will not be required for a family of 5, with 3 teenage children and two adults - one of whom is employed and another of whom is seeking employment. Certainly, allowance for transportation costs for only one vehicle is unrealistic and inequitable.

## THE TOTALITY OF THE CIRCUMSTANCES
## DOES NOT LEAD TO A FINDING OF ABUSE

An examination of the Debtors' Schedules reflects net current monthly income of $4,515.84 (Schedule I), and current monthly expenses of $6,481.80, including a $507.00 monthly child support obligation, which has been temporarily suspended during Mr. Sorrell's period of unemployment (Schedule J). The Debtor husband is seeking employment.

An examination of the Debtors' monthly expenses also reveals only reasonable and necessary monthly expenses necessary for the maintenance and support of the Debtors and their dependants. Further, the Debtors have surrendered a vehicle in order to reduce monthly expenses. Significantly, the Trustee has made no challenge to any of the itemized expenses listed on the Debtors' Schedule J.

It is well established that "substantial abuse" may be found where debtors have sufficient income to fund a chapter 13 plan and, thus, repay their debts. *In re Behlke*, 358 F.3d 429 (6th Cir. 2004); *In re Krohn*, 886 F.2d 123 (6th Cir. 1989).

It is clear beyond peradventure that the Debtors in the instant case do not have sufficient income to fund a Chapter 13 plan and repay their debts. Reasonable and necessary expenses exceed current income, and additional vehicle expense is anticipated.

For the reasons set forth hereinabove, it is respectfully submitted that application of relevant statutory and case law warrant a denial of the Trustee's Motion to Dismiss.

Respectfully submitted,

Dated: 9/26/06                                /s/ Eileen K. Field
                                              _____
                                              Eileen K. Field, Esq. #(0007384)
                                              Attorney For Debtors
                                              36 East Fourth Street, #1127
                                              Cincinnati, Ohio 45202
                                              Phone: (513) 684-9000
                                              Fax: (513) 684-8892
                                              eileenfield.atty@fuse.net

CERTIFICATE OF SERVICE

The undersigned herein certifies that a copy of the attached was served upon the following parties by regular US mail or electronically, on this 26th day of September, 2006:

Mark and Michelle Sorrell
5301 Renaissance Park Drive
Franklin, Ohio 45005

Paul Spaeth, pspaeth@phslaw.com

Pamela Rice, Pamela.D.Rice@usdoj.gov

                                              /s/ Eileen K. Field
                                              _____